Three cases on for argument this morning but before we begin on behalf of the court I would like to extend a warm welcome to Chief Judge David Folsom of the United States District Court for the Eastern District of Texas who is joining us this week. We appreciate Judge Folsom's help and we benefited as we have the number of visiting judges from his experience as a district judge and his perspective on the process and we look forward to sitting with him this morning. Appreciate those kind comments but the honor is mine. Thank you. Very well the first case for argument is number 2009-7093 Roberson against the Department of Veterans Affairs. Ms. Booth. Good morning your honor. Sandra Booth appearing on behalf of the case below the Veterans Court reinterpreted former section 38 USC 1151 and reinserted a fault component into one class of cases arising there under cases that are characterized as based on acts of omission by VA as opposed to acts of commission. Ms. Booth how let me ask you this question which I think is is central to the dispute here and it's you are talking about the category of omission cases and you don't have a concept of either fault or duty in which case you would have breach of duty which is fault. How do you determine causation and put any limits on it at all? That is to say why doesn't somebody who walked into let's say a VA regional office and wasn't immediately told boy you you're not looking well you should you know you should go to the to the VA hospital. How would that not be causal as you conceive the notion? I think there are two responses to that your honor. First of all reference to the secretary's own regulation after Gardner the secretary revised 38 CFR 3.358. It refers to and that's been revised since then and the current one I think is at 3.361 or 6.2 but in 1996 interpreting 1151 in the wake of Gardner the secretary promulgated 3.358 amendments and that regulation number one defines or refers to the injury the disease the aggravation of either one and tracks with the statutory language. It then goes on to set up a schematic that or a commission case. The regulation instructs the secretary on how to determine if there has been additional disability comparison of the condition before comparison of the condition afterwards. The secretary's regulation then bars compensation for the natural consequences of treatment. In this case and probably in almost any medical omission case a failure to the treatment was never provided. There's no natural consequences of treatment because it wasn't afforded to the veteran. In terms of then excluding particularly the kind of situation that you're talking about Judge Bryson I think the Supreme Court and Gardner addressed that and it said that you narrow the class of compensable cases not by inserting a fault requirement but rather by eliminating remote consequences. Approximate cause. Approximate cause test is that essentially what they said? Yeah I would believe that to be a proximate cause. So why wouldn't the proximate cause if I walked in with a broken ankle and yet they failed to diagnose my cancer which is nowhere visibly apparent to me and certainly didn't show up in a scan of my ankle why why isn't it the proximate cause when I ultimately die from that cancer if they had caught it on that day I was in the hospital then I could have been saved. The distinct distinction in this case I believe your honor is that Mr. Robertson was VA was the general primary caregiver for Mr. Robertson. So you're asking us to adopt a rule an interpretation of Gardner that would absolutely include the set of circumstances I just gave you and that's why I'm asking you is there some way where the crazy set circumstances I just articulated wouldn't suddenly be compensable. But I don't believe that the rule we're advocating does contemplate the circumstances of your example. In your example walking into the VA medical center and saying I have a broken ankle would you please treat me would not a failure to diagnose cancer where the treatment is limited to broken ankle would be a remote consequence under Gardner. So it's really because of the absence of a duty isn't it? I mean there's no duty on the part of the orthopedic physician to voluntarily search for some kind of other disease right? Well I don't the problem with starting to talk about duties is that in order to define the standard of care is and that runs directly contrary to Gardner to the no fault. That's the problem I'm having because if you don't if you do describe the test in terms of a duty then you do find yourself very quickly running to some kind of fault the breach of the duty as being responsible for whether you call it cause or whether you call it the fault. But if you don't talk in terms of duty then how do you limit the orthopedist as not having caused the aggravation but the internist having caused the aggravation? Well again I think it will come down to what the scope of the treatment provided involves. In Mr. Roberson's case he was particularly again VA was a primary care provider he was in particular evaluated for his deteriorating condition over the months leading up and within that four-month period that all of the experts agree was the the onset of his cancer. VA's experts say four to six I think Mr. Pritchard's or Dr. Pritchard who was a private physician said onset was within six to eight so there's agreement that it was within four months within that four-month period after cancer had had its onset. VA evaluated Mr. Roberson for his particular deteriorating condition and diagnosed him with an adjustment disorder. Ms. Booth if I could ask you in that regard my understanding of the facts Mr. Roberson was seen at Riverside in June of the year in question. You know the I'm sorry I can't provide that but and then was seen by the VA in the same month and my understanding a CT scan was conducted at Riverside on that June visit was found to be negative so correct I'm having a little difficulty why the VA should have detected that if if they didn't at Riverside. I don't think the VA should have detected that the problem arises that based on a fine needle biopsy test Dr. Pritchard who is the Riverside physician said the probable site of onset was in the lungs. There VA has some disagreement with that with that but it's the VA's experts say it could have been other places. What VA's experts agree is that based on the CT scan that you're referring to had to be within a few days of each other I would say. Yes it would have been within a few few days. I just have June 95 in my brief but let me take a moment to quickly look at the the record. He was evaluated I see you June 15. Yeah June 15 at Riverside. Yes. You know the date of the VA? The VA of 22 I think for the VA right isn't that that's what it looks like it at JA 99 and if that's the correct form it looks like it. Yes. Okay so a week later. The important consideration I think the important factor here is that at the time he was seen at Riverside as VA's experts agreed that clinical testing which was done to rule out a stroke was also evaluated by VA's experts as evidence of no brain metastasis. The brain metastasis is the critical  essentially his condition was untreatable. That's the position of the VA experts and Dr. Pritchard who was the treating physician at Riverside is basically consistent with that uses slightly different wording but the agreement is that once he became widely metastatic he was not treatable. So during that four month period prior to his diagnosis at which point he was widely metastatic and not treatable he was evaluated by VA at least as late as June he had not metastasized to the brain yet. But even Dr. Pritchard's letter of January 29 98 states it is unclear as to how long it could have been detected. You agree with obviously that assessment from Dr. Pritchard? Well he he placed on set between I specific point at which it could have been detected or detected or should have been detected within that time period preceding the August diagnosis when he was widely metastatic has not been developed well in the record because we didn't know we had a fault requirement. It was not relevant to develop that issue because whether it should have been detected certainly raises the issue about what's the standard of care what should the positions have done to evaluate. Could you comment on the alternative argument that the government makes that this is this question of fault isn't necessary to reach in as much as the board affirmed by the court made a finding of no causation as a matter of fact. I'm referring to the board's finding at J32 and the court's arguable endorsement of that finding. The error in the board the underlying error was that the medical decision or the medical opinion evidence which both the board and the veterans court relied upon in reaching that conclusion was developed in a based on a fault standard. The opinion letter is in particular at JA 124 and I would direct the court to the last five or six lines the last two questions. Did VA fail during a period of treatment to diagnose the disorder which caused the veteran's death when a physician exercising the degree of skill and care ordinarily required of the medical profession reasonably should have diagnosed that condition and rendered treatment? And then here is the important question the follow-up. If so in other words if there is that breach of the duty of care breach of standard of care did the veteran suffer additional disability or death which would probably have been avoided if proper diagnosis had been rendered the whole medical opinion is developed in terms of the standard of care was that standard of care breached and if it was breached then did it cause injury? The weakness in it is that Mr. Robertson, Mrs. Robertson did not was not required under Gardner to show that a standard of care was breached. So you can't reach the conclusion that either the board or the court did in reliance on this opinion if there is no fault standard applicable to failure to diagnose cases. If there's not she need not show breach of the duty of care this opinion is very harmful to her it's very prejudicial to Mrs. Robertson because it doesn't address the element that the right 3.358 requires what is the additional disability not what is the additional disability caused by negligence. You're into your rebuttal time would you like to say that? I would, thank you your honor. Very well. Ms. Kidman. Thank you and may it please the court. There appears to be no dispute between the parties about two key basic starting points for for the issues before the court today. The first being that it's it's agreed that a claimant must prove that VA's conduct caused an injury that there must be approximate cause showing. And second that it's necessary to distinguish injuries that result from a pre-existing condition and are the natural progression of that condition versus those that are caused by or made worse by some sort of action or failure on the part of a doctor. Ms. Robertson notably does not propose any way that that this distinguishing between the and the idea that VA did something to make the claimant's situation worse. Ms. Robertson doesn't really propose any alternative way that this can be proven aside from the way that the VA adopted and the Veterans Court affirmed to have showing the doctor should have diagnosed the illness. Well didn't Gardner remove fault from the calculation? Gardner removed fault as an element. There are three important distinguishing factors for Gardner. Gardner removed fault as a separate additional element on top of causation. Gardner of course involved. Gardner causation prong is proximate cause isn't it? Gardner interpreted the as a result of language yes in 1151 to mean that there has to be showing approximate cause. Okay so proximate cause is just but for causation so in this case but for the VA's failure to identify the cancer Mr. Roberson wouldn't have ultimately been injured or arguably might not have been. I mean you know the VA doctor said we can't say for sure we might have been able to save him we don't know we can't say for sure either way if it had been detected earlier so why isn't but for causation established in this case? Well initially I believe that but for causation matches up a little better with actual cause and proximate cause goes more to as Ms. Roberson has described eliminating remote consequences. Proximate cause goes more to the looking at the scope of the liability of a particular defendant but setting that aside your honor's question about whether the simple fact that VA did not some causal link between that action or inaction on VA's part and what kind of causal link that VA somehow made the condition worse? Well they did by not diagnosing it if it had been diagnosed earlier at a minimum treatment could have potentially prolonged his life so why didn't VA make it worse by failing to give him the treatment he could have that could have prolonged his life? Well under the second prong of 1151 in our alternative argument for affirmance the board and veterans court made a factual finding that VA's actions did not in fact hasten Mr. Roberson's death in fact the doctors opined that it was the VA doctor said it was at best for Mr. Roberson impossible to say whether he could have been cured. Yes exactly that that that isn't the same the fact that they said it's possible to say whether he couldn't been cured isn't the same thing as saying because we did nothing he was no worse off for it. Yes there there's a difference there but importantly the the doctors further explained that Mr. Roberson's cancer although there's a somewhat overlapping but a little bit different windows on precisely when the onset first occurred at page four of the appendix the veterans court talks about doctors opinions that the cancer actually first manifested meaning it was first detectable in August of 1995. That was what was that based on? Pardon me? What was that based on a test? That was the veterans court was referring to the opinion of the VA doctors and they were talking about particularly a CT scan use of a CT scan that was on October the 14th and they explained that August 14th yes sir one of the two lesions or metastases were not detectable just two days before it then became detectable it's it's indisputable this was very fast moving cancer and if if the disability is not preventable at all or there's no way that it could have been slowed then it cannot be said that a failure to diagnose was therefore the cause. Let me let me go back I'm still puzzled by the whether you are saying in the context of proximate cause that the concept of duty sneaks into the inquiry are you saying that there's no proximate cause if the physician who fails to diagnose did not have a duty to diagnose? Yes your honor. Isn't that really just inserting fault back into the the picture? It's certainly as your honor asked a question earlier in the argument that the duty and the standard of care is in fact a fault based analysis. And you think that's your argument is that that is it's not inconsistent with Gardner because this is an omission case and they have to be treated as a separate category of cases? That's one reason that that the and and as this court's opinion in Gardner explained what VA had done under the old regulation was say that you had to prove causation and then on top of that you had to prove negligence so VA's interpretation created a situation where there were situations where causation was clearly shown but because the claimant could not go that additional step and show actual malpractice or negligence VA had decided not to cover a situation. So the finding that fault couldn't be a separate element in addition to causation in that affirmative case does not necessarily preclude use of a should have diagnosed standard. And this sounds like I mean with respect that sounds like legal ledger domain because it sounds like what you're saying is what the Supreme Court said is you couldn't have two separate tests but as long as you put both tests under the same level and call it proximate cause then you can have a fault standard. Well we wouldn't say that. You wouldn't put it that way. We wouldn't say that the Supreme Court said that. We would say that the Supreme Court just simply did not address that second question and footnote three of Gardner. When the Supreme Court says fault can't be a part of the analysis fault doesn't have to be established you're saying under this prong it still has to be established under this other one. Not exactly. It's an awfully strange thing to impute to the Supreme Court. Well and that's it's not exactly what we're saying. We're saying that under the the first prong that you have to have an injury as a result of that well. And the Supreme Court rejected your fault analysis with regard to the quote as a result of language. The Supreme Court said the as a result of language simply meant proximate cause. It did not necessarily mean fault based standard. No not that it did not necessarily mean it did not require any showing the fault. Yes that the plain the the plain language the phrase as a result of did not mean fault. But footnote three of Gardner is very important. Two very important parts of that footnote that still provide additional guidance for this kind of situation. First of all that footnote three explains that it did not seek to overturn in any way that portion of the regulation that said injuries that are the result of a pre-existing condition are not compensable. So this particular case has to be in a way that reconciles that part of the opinion. And in addition that later in that footnote Gardner actually talks about in one type of tort causation type of inquiry the idea of consent. One who consents to a particular procedure can the defendant who performs that procedure cannot then be held responsible. So there's some tort causation. Please explain to me I'm sorry what is the import of footnote number three because you're telling me it's really important and I certainly don't see any relevance of the amputation gangrene limb aspect of footnote number three to our discussion of causation. And so obviously you must think it stems from the natural progression part at the beginning of that footnote. So I want to understand exactly what you think that means. Exactly your honor. Okay that that is the part that that sentence and the second sentence. First of all that the supreme court said it was not overturning the portion of the regulation which excluded from compensation the natural progression of a disease. Here VA has broadly interpreted 1151 to reach the conclusion that omissions failures to diagnose are compensable in the first place. And it's now left in a situation of having to. That was that's after all of this. You're back applicable to this case you mean subsequent to all of this. Yes your honor. Those new regulations are irrelevant to what we're deciding here. Well and I wasn't referring to new regulations but that the VA scheme in general has decided it will recognize failure to diagnose claims. And so VA is left in a position of now not covering and the supreme court has affirmed you can't cover the natural progression of the disease. So VA has to figure out well how do we show how does a claimant show that VA did something to make the claimant situation worse than the natural progression of the disease would have made the claimant. And the simple fact is that the only logical way to do it the only way that VA can find from comparison to common law principles looking at the legislative history the only possible way to show that is to show that a doctor should have diagnosed the illness. But that what you presented in Gardner and the supreme court rejected. That's what I'm struggling with. I understand. I'm sympathetic to the logic of your argument. It's just that the supreme court already rejected it pretty straightforward and soundly. That's where I'm stuck. Well of course we as I've said believe that Gardner was looking at a slightly different fault based question. Of course causation there was no causation issue in Gardner. This kind of question wasn't teed up to the court in that case. Let me see if I understand the argument you're making with respect to natural progression of the disease. You're not suggesting are you that as long as the natural progression of the disease would have death or other injury to the veteran that the failure to treat can never be actionable? Not at all. Not at all. So we there's already been some discussion this morning of the kind of situation where someone goes in for a leg injury has cancer that's diagnosed. The opposite type of hypothetical that I believe could very well be compensable under VA's to complaining of ear pain and has an ear examination of some sort. The doctors look at the ear, fail to diagnose an infection that should have been apparent. Perhaps the veteran loses hearing because of that. I think that could be fine. Okay fine. I just wanted to make sure you weren't suggesting that as long as it's the natural progression there's no regardless of duty there's no compensable injury or no compensable conduct on the part of the VA. Not at all. The key is that VA and that latter type of hypothetical can be said to have done something to hasten or worsen the disease. And to have breached a duty. Yes your honor. A duty of care. You really your test incorporates breach of duty of care as a necessary part whether you call it fault or approximate cause does it not? It does. Yes. How would you define injury or aggravation of the injury at under 1151? Well I think it's first and foremost perhaps a question for Ms. Roberson exactly how she was injured. The Veterans Court defined the injury as said it could be nothing other than the failure to diagnose in and of itself but in turn cited cases that said making the veterans illness worse or these weren't Veterans Court cases that the Veterans Court cited but at page eight of its opinion it cites several cases describing the injuries for example the worsening or the deterioration of the condition that results from the failure to diagnose. Okay so is the government's position that the injury is the act failure to diagnose or the injury is the result or the the physical ailment of the person? I think the the Veterans Court literally said it must be the the failure to diagnose but the natural logic of that is. I'm asking what the government's position is not what the Veterans Court said. Okay that. Because I'm assuming you're not going to adopt their position since it's inconsistent with Gardner. Well I think the injury has to be said to be best case scenario for this type of claim would be perhaps not treating a treatable illness earlier or not diagnosing at a particular point in time of the illness. The Gardner decision said the injury is the condition prior to treatment in question and Gardner repeatedly talks about the injury being what is wrong with the physical person right not the act that caused it the injury isn't the leaving the sponge inside the body it's not the act it's the physical ailment of the person and the Veterans Court seems to have redefined it ignoring the clear definition in Gardner as instead being the act the failure the omission as opposed to the cancer or you know the metastasis or whatever. So I just wanted to understand because if an opinion has to be written someone has to define these terms what the government's position is so that it's not misstated in my opinion so what is the government's position is the government's position that the word injury in the statute refers to the act that the government VA official takes or is it that the word injury refers to the condition of the individual? It would be the latter the act itself I believe would refer more accurately to the medical treatment or the where the statute says injury as a result of medical treatment or hospitalization that's focusing on the action. But even if the court were to decide that the Veterans Court misinterpreted 1151 or impermissibly departed from Gardner in its analysis of that first prong there is an alternate ground to affirm here with the second prong. The Veterans Court addressed Ms. Roberson's arguments the same arguments that have been raised this morning that the doctors somehow impermissibly incorporated the standard of care inquiry into their opinion. The Veterans Court rejected that argument saying that the VA doctors merely discussed the causation question not focusing on the negligence question looked at them separately and although as Ms. Roberson's counsel points out this morning the doctor the letter to the doctors used this if so language did VA fail to follow a standard of care and if so did the veterans suffer an additional disability? A few pages later in the appendix this is page 128 the doctors actually went on to answer that question not in the context of the standard of care. I'm sorry go ahead I thought you were okay do we have jurisdiction to decide that question let's say the causation question or is that a factual question that's outside of our jurisdiction? The ultimate causation question whether anything VA did hastened the claimant's death is is outside of this court's jurisdiction. How about the question as to the characterization of the doctor's opinion? That's a finding of fact also outside this court's jurisdiction. Now what's the language again of the I don't have it here you if you happen to have it of the court's opinion that you're relying on for the argument that the court viewed the doctor's opinion as being segregated from the question that was presented to the doctor? This is that page the bottom of page 10 of the appendix the third sentence of section number four and the veterans court explained the medical opinion merely discusses whether VA's failure to diagnose the cancer resulted in the death. Thank you well we've gone a bit over Miss Kidmiller and we'll give Miss Booth her full five minutes. Thank you. Thank you your honor. I have several things to respond to. First of all the medical opinion did not respond to whether the death was hastened. What it said was that it's impossible to know if he would have been cured if he had been detected earlier. However after he was diagnosed the medical opinion is clear that death is not a medical because of the brain metastatic brain involvement usually not always but usually results in death within 10 months and we have no quarrel with that. That's correct the issue is whether or not prior had he been diagnosed before the metastasis would it have made a difference in his treatment and that issue is not addressed in this opinion outside of the issue of whether or not there was a failure to diagnose. Regarding the discussion with Gardner I would like to note that the Gardner did not rule out injuries due to pre-existing conditions indeed the statute specifically contemplates pre-existing conditions by the use of the term aggravation. The Gardner does agree that VA may bar the natural compensable injury from the natural progress but the natural progress is defined in the secretary's regulation to be natural progress of the disease despite the treatment despite the veterans informed consent. It doesn't apply at least not so neatly in the case of a failure to diagnose. I would not rule out that the government might not develop evidence in a failure to diagnose case that would show had he been properly had he been diagnosed earlier and treated it still would not have made any difference but there is no evidence of that in this case. Well but the assuming we take the court as having or the board and ultimately affirmed by the courts having made that finding do we have jurisdiction to inquire as to whether that finding is sound? I think that finding goes to the issue of whether there has been prejudicial error to Mrs. Roberson in light of the position of the fault standard. That error if there is no fault if there is a fault standard I'm sorry there's no error. Right but the Ms. Kidmiller's argument is that the board and the court in particular the court separated the two with respect to the alternative finding as to no causation. Now your argument in response is well no they really couldn't have done that because that was not what the doctor said but if that's the issue do we have jurisdiction to decide that issue given the limitations on our jurisdiction over factual issues? Well yeah I believe you do your honor because the correct legal standard for the Veterans Court to have applied is found in 3.358. Was there additional disability? In this case the injury was not cancer Mr. VA did nothing to cause the cancer the injury was the metastatic process. That metastatic process is what caused his early demise so in that case I think the court can reach whether or not the Veterans Court applied the correct legal standard in determining whether or not the veteran had an injury which is what the hastening of his death goes to did he have an injury. I can just appreciate from a human standpoint what the consequences of reversing would be if this were found to be service connected what difference would that make to Ms. Roberson? If the veteran's death is service connected then she is entitled to a widow's benefit under the what's called the dependency and indemnity compensation provisions and that's found at 38 U.S.C. 1310 it authorizes a widow's pension where the veteran's death is treated as though service connected. Could I just to make sure I have clearly in mind the point that you made in your original argument as to why it is what that your articulation of the test that explains to us why the orthopedist in the I think Judge Moore's hypothetical would not give rise to liability on the VA's part but the internist's discover would. I think your honor that it depends on the purpose of the VA treatment. If the VA undertakes to treat the veteran for a tooth that needs to be filled and fails to diagnose that he has cancer of the foot or cancer of some other body part that's such a remote consequence of anything that the veteran that VA did or did not do with respect to the dental treatment. In this case suppose the cancer was of the throat. I think that becomes a closer question although I think it's a fact-based question under the the I'm having a brain freeze here though the Supreme Court's test about the perceivable consequences. Approximate cause. Well now there is a phrase and oh they didn't use that I guess that's right. I'm sorry it's absolutely escaping me at the moment. It's okay we have the case. Okay and so you know a treatment for a very limited defined purpose would be it would not be a close case in my view under the Gardner test. Where the VA however is a primary care provider and is evaluating the veteran for deterioration and health and then takes the extra step of making a diagnosis. In this case attributing it to his stroke residuals or as a history of his stroke residuals. In fact as Judge Folsom pointed out in the June CT scan that further stroke was ruled out. VA did not evaluate whether he actually had a stroke another stroke. They just assumed that deterioration was because of his stroke residuals. They otherwise diagnosed his deteriorating condition as an adjustment disorder. That I think is what takes it outside the scope of your original example your honor. So tell me if this summary is not fair. That what you're saying is that if the condition or the aggravation of the condition that is not detected is within the scope of the undertaking by the VA. The medical undertaking that the VA has engaged in which is in this case general care. And you would would that be a test that you would think would be the right test to apply here? I think that would be an element of determining whether or not the result the the unfavorable result was a remote consequence. Okay. All right. Yes. Thank you. The case is submitted.